NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court-Goffstown District Division
No. 2019-0027

AMANDA COLBURN

v.

NICHOLAS SAYKALY & a. [1]

Argued: November 19, 2019
Opinion Issued: March 11, 2020

Shaughnessy Raiche, PLLC, of Bedford (Brian C. Shaughnessy and James B. Kazan on the brief, and Mr. Shaughnessy orally), for the plaintiff.

Cohen and Winters, PLLC, of Concord (Andrew S. Winters and Elroy F. Sequeira on the brief, and Mr. Winters orally), for the defendant.

BASSETT, J. The defendant, Nicholas Saykaly, appeals an order of the 9th Circuit Court-Goffstown District Division (Gorman, J.) issuing a writ of possession to the plaintiff, Amanda Colburn. On appeal, the defendant argues that the trial court lacked subject matter jurisdiction to hear the plaintiff's landlord-tenant action because the home in question was marital property subject to the parties' ongoing divorce proceeding, and because the defendant is not a "tenant" of the plaintiff. He contends that the 9th Circuit Court–Goffstown Family Division has exclusive jurisdiction over the home until either

---

[1] The additional defendant named in the trial court did not participate on appeal.

the divorce proceeding is finalized or the family division relinquishes jurisdiction over the home. Because we conclude that the district division has jurisdiction to hear and decide this case, we affirm.

The following facts are supported by the record or undisputed on appeal. Between 2009 and 2013, the parties lived in a single-family home owned by the plaintiff in Manchester (the original home). The parties later moved to a nearby home, which is owned solely by the defendant (the marital home). Following the move, the parties rented their original home to the defendant's brother. The parties agree that both homes are marital property.

In March 2018, the plaintiff filed a petition for divorce in the family division. On August 13, 2018, the court issued a temporary order and decree in the divorce case providing that the plaintiff would continue to reside in the marital home, and permitting the defendant to reside with his brother at the original home. The court also decreed that the plaintiff would receive all rents from, and manage, the original home.

Shortly thereafter, the plaintiff discovered that the water from the well servicing the original home was contaminated with E. coli and coliform bacteria. The plaintiff determined that the best way to avoid harm to the occupants was to evict them and take the home off the rental market until she could replace the well. Accordingly, the plaintiff served the defendant and his brother with an eviction notice. When they did not vacate the home, the plaintiff commenced an action in the district division seeking a writ of possession. Coincidentally, the judge presiding in the divorce action also presided in the eviction case.

At the merits hearing in the district division, the plaintiff argued that, because the original home is "[n]onrestricted property," RSA 540:1-a, I(a) (2007), she could lawfully evict the occupants without good cause. She further argued that, even if she needed to show good cause, the health hazard presented by the contaminated water satisfied that standard. The defendant argued that, inter alia, the district division lacked jurisdiction to hear the case because the dispute was between spouses and involved marital property that was the subject of a pending divorce action. The plaintiff countered that the district division had jurisdiction because the eviction case concerned only possession of the original home, and did not impact the equitable distribution of marital property.

During the merits hearing in the district division, the court expressed concern that, apart from the ongoing divorce proceeding, it might lack jurisdiction to adjudicate the defendant's right to reside at the original home. The trial court also observed that the right of the defendant's brother to reside in the home could not be adjudicated in the divorce proceeding. Ultimately, the court found for the plaintiff. The court also stated that its order was issued

2

without prejudice to the rights and responsibilities of the plaintiff and defendant in the ongoing divorce proceeding. This appeal followed.

The sole question before us is whether the district division had subject matter jurisdiction over the eviction action. A court does not have power to hear a case concerning subject matters over which it lacks jurisdiction, and subject matter jurisdiction cannot be conferred where it does not already exist. Maldini v. Maldini, 168 N.H. 191, 194 (2015). The ultimate determination as to whether the district division had jurisdiction in this case presents a question of law, and, therefore, our review is de novo. Id.

Because the circuit court, its divisions, and its jurisdiction, are created by statute, see RSA 490-F:2, :3 (Supp. 2019), we look to the relevant statutes to answer the question presented by this appeal. See Maldini, 168 N.H. at 194. When undertaking statutory interpretation, we first examine the language found in the statute and, where possible, we ascribe the plain and ordinary meanings to words used. Id. at 194-95. When a statute's language is plain and unambiguous, we need not look beyond it for further indications of legislative intent. Id. at 195. "Courts can neither ignore the plain language of the legislation nor add words which the lawmakers did not see fit to include." Id. (quotation omitted). We interpret statutes not in isolation, but in the context of the overall statutory scheme. Id.

The defendant first argues that the district division lacked jurisdiction to hear the eviction case because, by virtue of the ongoing divorce case, the family division has exclusive jurisdiction over the original home. Alternatively, the defendant argues that the district division lacked jurisdiction because he is not the plaintiff's tenant. We address each argument in turn.

RSA 490-D:2 provides, in pertinent part, that "the judicial branch family division" has exclusive jurisdiction over "[p]etitions for divorce, nullity of marriage, alimony, custody of children, support, and to establish paternity." RSA 490-D:2, I (2010). "When a dissolution of a marriage is decreed, the court may order equitable division of property between the parties," which includes "all tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties." RSA 458:16-a, I, II (2018).

The defendant argues that RSA 490-D:2 and RSA 458:16-a, I, II grant the family division exclusive jurisdiction and "inherent" authority over all assets owned by either spouse. He asks us to adopt a bright-line rule that, once a divorce petition is filed, the family division has exclusive jurisdiction over marital property vis-à-vis the spouses.

We disagree with the premise of the defendant's argument. RSA 490-D:2 does not grant the family division "exclusive jurisdiction" over the assets owned

3

by divorcing spouses, either individually or collectively.  Rather, according to its terms, the statute merely grants jurisdiction to the family division over the divorce proceeding itself.  Even if the defendant were correct, the legislature has not included his proposed bright-line rule in RSA chapter 490-F, and we will not read one into the statutory scheme.  See Maldini, 168 N.H. at 195.

Moreover, we decline to construe RSA chapter 490-F in a fashion that would curb the flexibility afforded to the circuit court by the legislature.  "The legislature established the circuit court in 2011 by merging the former probate and district courts and the former judicial branch family division."  In re Search Warrant for Records of AT & T, 170 N.H. 111, 113 (2017); see Laws 2011, 88:1.  It conferred the "jurisdiction, powers, and duties of these former courts upon the circuit court, and divided the circuit court into three divisions: a probate division, a district division, and a family division."  In re Search Warrant for Records of AT & T, 170 N.H. at 113 (quotation omitted); see RSA 490-F:3.  "Each circuit court location . . . [has] the authority to hear all cases within the subject matter jurisdiction of the circuit court," and the legislature has expressly permitted "the reassignment of cases within the circuit court as justice or efficiency require[ ] in the discretion of the administrative judge of the circuit court."  RSA 490-F:2.

Although there remain statutory references "to the probate or district courts or to the judicial branch family division," those references "shall be deemed to be to the New Hampshire circuit court where it has exclusive jurisdiction of a subject matter and to the superior court and circuit court where the circuit court has concurrent jurisdiction with the superior court."  RSA 490-F:18 (Supp. 2019).  Circuit court judges are assigned to a division within the court "at the discretion of the administrative judge," as "justice and efficiency require."  RSA 490-F:6, VI, VIII (Supp. 2019).  "Judges may be certified in all divisions of the circuit court" pursuant to supreme court rules.  RSA 490-F:6, VII (Supp. 2019).

The defendant's proposed bright-line rule would create a rigid barrier that would undermine the flexible design of the circuit court and its divisions.  The statutory scheme allows judges to be certified in, and move between, all divisions of the circuit court as justice and efficiency require.  See RSA 490-F:2, :3, :6, VI, VII.

We similarly decline the defendant's invitation to adopt a "first-in-time" rule in cases in which the family division has exercised jurisdiction over marital property.  The proposed rule would mean that the family division has jurisdiction over marital property to the exclusion of all other courts once the family division has exercised jurisdiction over such property.  The legislature has not imposed such a requirement in RSA chapter 490-F, and we will not do so by judicial fiat.

4

In support of his "first-in-time" theory of exclusive jurisdiction, the defendant relies heavily upon Sullivan v. Algrem, 160 F. 366 (8th Cir. 1908), an opinion issued by the Eighth Circuit Court of Appeals more than a century ago. However, Sullivan is inapposite and sheds no light on the intent of the legislature when it created the circuit court in 2011.

The defendant next argues that, because he is not a "tenant" pursuant to RSA 540-A:1, II, and, therefore, lacks a landlord-tenant relationship with the plaintiff, the district division had no jurisdiction over the eviction case. We disagree. Although the defendant's assertion that he is not a "tenant" pursuant to RSA 540-A:1 is accurate, see RSA 540-A:1, II, RSA chapter 540-A governs proceedings and penalties only in cases in which a landlord or tenant engages in a "prohibited practice." See RSA 540-A:2 (2007), :3 (Supp. 2019). There is no allegation of a "prohibited practice" in this case, and, therefore, RSA chapter 540-A is not implicated. However, RSA chapter 540, the chapter governing residential evictions in New Hampshire, expressly provides that possession may be recovered "from a lessee, occupant, mortgagor, or other person in possession." RSA 540:12 (2007). Thus, the district division was not without jurisdiction to adjudicate the eviction action merely because the defendant was an occupant rather than a tenant.

The defendant also urges us to adopt the reasoning of the trial court in Giuffrida v. Giuffrida, 649 N.Y.S.2d 773 (N.Y. Civ. Ct. 1996), that a "licensee" permitted to reside at a premises by one with a right to possession of the premises is not subject to the jurisdiction of the court in an eviction action. Giuffrida, 649 N.Y.S.2d at 776. However, Giuffrida is inapposite. Not only did the case turn upon the specific language of a New York statute, but it involved a theory of property ownership — tenancy by the entirety — which is "a form of ownership whose attributes are not recognized in New Hampshire." See Estate of Croteau v. Croteau, 143 N.H. 177, 180 (1998).

Finally, it is important to note that the district division's order explicitly provided that it was issued without prejudice to the rights and responsibilities of the parties in the divorce proceeding. In addition, the defendant remains free to seek a modification of the family division's temporary order in light of his eviction.

As Justice Holmes observed, "the machinery of government would not work if it were not allowed a little play in its joints." See Rafferty v. State, 107 N.H. 387, 389 (1966) (quoting Bain Peanut Co. v. Pinson, 282 U.S. 499, 501 (1931)). Here, the legislative scheme governing the circuit court requires play in its joints to function properly, rather than a rigid rule that reduces the flexibility afforded to the circuit court divisions by the legislature. We are confident that, when two or more divisions of the circuit court have jurisdiction over parties or property, each division will assess the circumstances and wisely exercise its discretion, deferring to other divisions if and when appropriate.

That is exactly what happened here.  Accordingly, we hold that the district division has jurisdiction to hear and decide the eviction action.

Affirmed.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.