**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2022-0504, <u>In the Matter of Janine Fraser and Martin Fraser</u>, the court on August 21, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The respondent, Martin Fraser, appeals a final decree issued by the Circuit Court (<u>Cooper</u>, R., approved by <u>Luneau</u>, J.) in his divorce from the petitioner, Janine Fraser. He argues that, in determining his gross income for purposes of calculating child support and alimony, the trial court erred by not deducting business expenses from the gross income of a business in which he has an interest. He further challenges the division of marital property, arguing that the division was neither equal nor equitable, and that the trial court erred in certain other aspects of the property award. We affirm.

The trial court has broad discretion in fashioning a final decree of divorce. <u>In the Matter of Spenard & Spenard</u>, 167 N.H. 1, 3 (2014). The trial court's discretion includes decisions concerning child support, alimony, and property distribution. <u>Id</u>. We will not overturn the trial court's rulings on such matters absent an unsustainable exercise of discretion, reviewing the record only to determine whether it contains an objective basis to sustain the trial court's discretionary judgments. <u>Id</u>. If the trial court could reasonably have reached its findings on the evidence before it, they will stand. <u>Id</u>. We defer to the trial court's judgment in resolving conflicts in testimony, evaluating the credibility of the witnesses, and determining the weight of the evidence presented. <u>In the Matter of Aube & Aube</u>, 158 N.H. 458, 465 (2009).

We first address the respondent's argument that the trial court erred by not deducting business expenses when determining his gross income for purposes of child support and alimony. The business at issue is a limited liability company that the respondent owns and operates with another person. As the trial court observed, the respondent bore the burden to establish his income from the business, including the legitimacy and deductibility of any business expenses he sought to deduct in establishing his gross income. <u>See</u> <u>In the Matter of Maves & Moore</u>, 166 N.H. 564, 569 (2014); <u>In the Matter of Hampers & Hampers</u>, 166 N.H. 422, 440 (2014).

The trial court found that the respondent continually "fail[ed] to provide necessary financial discovery" regarding the business, including "a complete accounting of business income" that the court had ordered "in advance of the

[final] hearing." The trial court further found that the respondent had "not provided any except the most basic of financial information requested of him by the Petitioner and the Court for most of the time this matter has been pending." Accordingly, the trial court determined that "[w]ith respect to the financial issues in this matter, . . . the Respondent's testimony [was not] credible to virtually any degree." Likewise, the trial court observed that the respondent's business partner, who testified, "was either ill prepared or uninformed with most of his answers on important issues before the Court," and that "information requested of him . . . was apparently in his possession (perhaps electronically)[, but] was not provided to the Court in accordance with the previous orders directed to the Respondent." The transcript amply supports these findings, and the respondent does not challenge them.

Because the respondent failed to produce the financial records that the trial court had "repeatedly ordered" him to disclose, the court determined that it was not "in a position to evaluate the ongoing expenses of the business." The trial court additionally noted that the respondent had introduced only ten months of banking records, that those records demonstrated that, notwithstanding his claim that he had monthly income of only $500 and expenses of $583, the business averaged gross monthly deposits of $36,987 over the ten months, and that the respondent had not filed, or submitted into evidence, any recent tax returns. Finally, the trial court noted that there was no written agreement between the respondent and his business partner regarding the business, that the testimony established only an "unclear oral agreement" regarding the business, and that, therefore, it inferred that the respondent was a 50 percent owner of the business.

On these facts, the trial court noted that it ordinarily would attribute monthly income to the respondent of $18,493.75, or half the gross monthly deposits reflected in the banking records. Because the petitioner "requested that the Court use a lower monthly figure of $10,000 . . . for purposes of child support and alimony calculations," however, the court determined that it would utilize that amount absent "other credible information."

On this record, we cannot conclude that the trial court unsustainably exercised its discretion. As the trial court observed, the respondent did not comply with multiple orders to produce financial records that would have allowed it to evaluate the legitimacy and deductibility of business expenses. The trial court was not required to credit the testimony of the respondent and his business partner that the ten months of bank statements, alone, were sufficient for that purpose. See In the Matter of Crowe & Crowe, 148 N.H. 218, 223 (2002). The respondent testified that he had not filed a federal income tax return in several years. Nevertheless, in response to an interrogatory, he disclosed that in the twelve months prior to the litigation, he had between

2

$7,000 and $10,000 in gross monthly income.  We conclude that the record contains an objective basis to support the trial court's determination that the respondent's gross monthly income was $10,000.  See id.

We next address the respondent's challenges to the property distribution.  RSA 458:16-a, II (Supp. 2022) requires the trial court to divide marital property, including marital debt, see Maldini v. Maldini, 168 N.H. 191, 195 (2015) (stating that "marital property" includes "marital debt" for purposes of property division), in a manner that is equitable, see In the Matter of Sarvela & Sarvela, 154 N.H. 426, 431 (2006).  The trial court is required to presume that an equal division of marital property is equitable unless it determines, after considering one or more statutory factors, that an equal division would not be equitable or appropriate.  RSA 458:16-a, II; Sarvela, 154 N.H. at 431.  The trial court need not consider all of the enumerated factors or give them equal weight, and is not required to divide the property by some mechanical formula, but in a manner it deems just based upon the evidence presented and the equities of the case.  Sarvela, 154 N.H. at 431.  The trial court may award a particular marital asset in its entirety to one party under the statute.  In the Matter of Henry & Henry, 163 N.H. 175, 183 (2012).

The respondent argues that the property division was neither equal nor equitable because the trial court allocated the following marital debts to him: (1) all debt on the marital home, other than half the "back debt on the mortgage" that had "accumulated since the entry of the Temporary Orders"; (2) any deficiency in the event of a foreclosure sale of the marital home; (3) a joint federal income tax debt, which the respondent claimed to be approximately $350,000; and (4) a $5,200 credit card debt that he claims was used to pay for family vacations.  He further argues that the trial court erred by awarding certain cars to the petitioner that he asserts are owned by his business and, thus, are not marital property, by not making sufficient findings under RSA 458:16-a, and by issuing inconsistent orders regarding the debt on the marital home.  We disagree.

To the extent the respondent argues that the trial court erred by awarding the business's cars to the petitioner, we note that although the trial court awarded the cars at issue to the petitioner in its final decree, it granted the respondent's request on reconsideration to "[o]rder the vehicles owned by [the business] returned to" the business.  Accordingly, the trial court corrected the purported error prior to the present appeal.

With respect to the respondent's argument that the trial court's orders were inconsistent with respect to the debt on the marital home, we find no inconsistency.  The respondent claims that the trial court required the parties to "shar[e] any mortgage deficiency," but then inconsistently made him "responsible for 'all debt owed on the marital home.'"  In its decree, the trial court allocated "all debt owed on the marital home" and "any deficiency owed

3

on the marital home if foreclosure occurs" to the respondent, but after awarding the marital home to the petitioner, provided that "the parties are each responsible for the back debt on the mortgage which has accumulated since the entry of the Temporary Orders."  Reading these provisions of the decree together, we construe the decree as having allocated all debt encumbering the marital home, other than half of any mortgage debt that had accumulated since the trial court issued temporary orders, to the respondent.  See In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) (stating that the interpretation of a trial court order is a question of law, which we review de novo).  We note that the evidence at trial establishes that: (1) both a federal tax lien and mortgage debt encumber the home; (2) according to the respondent, there is no equity in the home as a result of the tax lien and mortgage debt; (3) the mortgage is in the name of the respondent, not the petitioner; (3) neither party submitted a current mortgage statement into evidence; (4) the trial court ordered the parties each to pay half the mortgage in the temporary order; and (5) other than a few mortgage payments that the respondent claims he made at the outset of the divorce, neither party had paid the mortgage for approximately three years prior to the final hearing.

Finally, we reject the respondent's arguments that the trial court failed to make sufficient findings under RSA 458:16-a, II to justify an unequal division of property, or that the evidence does not support the property division.  We assume, without deciding, that the property division was unequal.

The trial court found, and the respondent does not dispute, that this was a long-term marriage.  See RSA 458:16-a, II(a) (trial court may consider the duration of the marriage in dividing property unequally).  The trial court also found, as noted above, that the respondent failed to provide anything other than "the most basic of financial information requested of him by the Petitioner and the Court" regarding his business, notwithstanding that the respondent's interest in the business was a significant marital asset that he sought, and that the trial court awarded solely to him.  See RSA 458:16-a, II(o) (trial court may consider any other factor it deems relevant in dividing property unequally).  There was no evidence introduced at trial as to the value of the respondent's interest in the business.

Additionally, the trial court found that the respondent had failed to pay recent taxes on his business income.  Id.  According to the respondent, the total tax liability was approximately $350,000.  The evidence at trial establishes that, prior to the divorce, the respondent's business was profitable and was the family's sole source of income, that the petitioner did not work from before the parties' 2005 marriage until late 2018 in order to care for the parties' six children, that the petitioner only obtained part-time employment in late 2018, and that the respondent strictly controlled the family's finances and filed all tax returns throughout the marriage.  As noted above, the respondent himself testified that he did not believe that the marital home had any equity

4

because of the federal tax lien and mortgage debt.  The respondent further testified that if the trial court awarded him the marital home, he would attempt to sell it in order to pay the federal tax debt and all liens on the property, and that if he were unable to do so or it went into foreclosure, he would "absorb any remaining deficiency."  On these facts, we cannot conclude that the trial court unsustainably exercised its discretion by allocating to the respondent the federal tax debt, the debt on the marital home (other than half the "back debt on the mortgage" that had "accumulated since the entry of the Temporary Orders"), any deficiency in the event of a foreclosure sale of the marital home, or the $5,200 credit card debt.

In light of this order, the petitioner's motion to expedite the appeal is moot.

<u>Affirmed</u>.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**

5